UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NUMBER. 14-018 |
| RICHARD ZANCO | SECTION: "E"(5) |

**REPORT AND RECOMMENDATION**

I.   **Introduction**

On March 26, 2014, pursuant to a plea agreement with the Government, Richard Zanco, Defendant herein, pled guilty to a one-count felony bill of information charging him with money laundering, a violation of 18 U.S.C. §§1957 and 2.  (Rec. docs. 16, 17, 18). According to that initial charging document, in or around May of 2012, Zanco became aware that his name and other personal identifying information had been used to open one or more online accessible brokerage accounts that held collateral-mortgage obligations ("CMO"), investment devices that were described as a bond-like "…type of complex debt security that repackages and directs the payments of principal and interest from a collateral pool to different types and maturities of securities."  (Rec. doc. 1, pp. 1-2).

Thereafter, beginning at a time unknown and continuing through at least September of 2013, Zanco fraudulently obtained access to one or more of those brokerage accounts and ordered the liquidation and sale of the interest proceeds generated by the CMOs on a monthly basis, electronically transferring those funds to other financial accounts that he controlled and ultimately using them to purchase multiple automobiles and one or more boats.  (*Id.*).  Although the bill of information lists 15 such transactions totaling $343,998.82 that occurred over a roughly six-month period in 2013, "the offense" that was the subject of

the bill was identified as the withdrawal of approximately $27,000.00 on March 18, 2013 that Zanco reportedly used to purchase a boat for his personal use. (*Id.* at pp. 2-4). The bill of information also contains a notice of money laundering forfeiture with respect to the property that was involved in or traceable to that involved in Count I. (*Id.* at pp. 4-5).

Prior to the entry of the Defendant's guilty plea, the Government filed a bill of particulars with respect to its request for property forfeiture, identifying $433,533.45 in U.S. currency, including but not limited to "any and all interest, dividends, cash or any type of proceeds generated from" a certain Capital One Investment Services account in his name as well as $9,445.80 that was seized from another Capital One account. (Rec. doc. 15). In due course and based upon the parties' plea agreement, a preliminary order of forfeiture was entered as to the monies held in those two accounts. (Rec. doc. 35). Pursuant to that order, notice of the forfeiture was provided to three individuals/entities (rec. docs. 51-53), two of which have since filed petitions under 21 U.S.C. §853(n) to adjudicate their alleged interests in the forfeited property. (Rec. docs. 72, 77). Those two petitioning entities are "Ten Cayman Ltd." and "Global Acquisitions Network." (Rec. docs. 72, 77).[1]

On May 20, 2015, Zanco appeared for sentencing accompanied by retained counsel, receiving a total of 30 months as to Count I, to be followed by a three-year term of supervised release thereafter. (Rec. docs. 66, 67). Zanco was also ordered to pay restitution in the amount of $294,569.93 to payees "[t]o be determined." (Rec. doc. 67, p. 5). During the course

---

[1] Although the name of an attorney from Georgia, Ryan K. McLemore, appears on some of the submissions from Ten Cayman, all of those filings were executed by only Stanley E. Thomas, who is identified as the entity's "Director/Owner." (Rec. docs. 72, 82, 87, 89, 92, 94, 99). All submissions from Global Acquisitions Network were executed by an individual named Shawn Corneille who provides a mailing address in California. (Rec. docs. 77, 81, 84, 85, 90). A third entity that was also provided notice of the forfeiture was "White Blue Cross, LTD" which, despite acknowledging receipt of that notice, has not filed a petition under 21 U.S.C. §853(n). (Rec. docs. 53, 74).

of the sentencing proceeding, the Government advised the District Judge that multiple individuals had indicated that they intended to assert competing claims regarding their entitlement to restitution. (Rec. doc. 66, p. 2). Accordingly, that issue was referred to the undersigned in an effort to determine the rightful restitution recipient(s). (*Id.*). Thereafter, the issue of separate claims to forfeited property under §853(n) that were filed by Ten Cayman and Global Acquisitions Network were also referred to the undersigned. (Rec. docs. 72, 73, 77, 78). Since the time of the original referral, the Court has held several conferences in this matter, which have at times included counsel for the Government and the Defendant, the U.S. Probation Officer, and, at the most recent telephonic conference, representatives of the two putative claimant entities as well as an attorney who is licensed in the State of Georgia but who is apparently not admitted to practice in Louisiana or in this District and whose signature appears no where on the §853(n) petition filed by Ten Cayman. (Rec. docs. 69, 75, 80, 72). The Court has also received supplemental submissions from Ten Cayman and Global Acquisitions Network in addition to briefing from the Government. (Rec. docs. 81, 82, 84, 85, 87, 89, 90, 92, 94, 98, 99).

**II.     Restitution**

The Mandatory Victims Restitution Act ("MVRA") directs sentencing courts to order restitution to victims of "offense[s] against property ... committed by fraud or deceit." 18 U.S.C. §§3663A(a)(1), (c)(1)(A)(ii). Under the MVRA, a "victim" is defined as a "person <u>directly</u> <u>and</u> <u>proximately</u> <u>harmed</u> as a result of the commission of an offense." 18 U.S.C. §3663A(a)(2)(emphasis added). In *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 1981 (1990)("*Hughey I*"), the Supreme Court held that the language and structure of the Victim and Witness Protection Act of 1982 ("VWPA"), the predecessor statute to the MVRA,

3

made "... plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." In response to *Hughey I*, Congress amended that portion of the VWPA dealing with the category of eligible victims to provide that restitution may be awarded to any person who is directly harmed by the defendant's course of criminal conduct when the subject offense involves a scheme, conspiracy, or pattern of criminal activity. *See United States v. Hughey*, 147 F.3d 423, 437 (5th Cir.), *cert. denied*, 525 U.S. 1030, 119 S.Ct. 569 (1998)("*Hughey II*"). Congress' expansion of the category of eligible victims notwithstanding, the Fifth Circuit has since taken the view that the "... part of *Hughey*[I] which restricted the award of restitution to the limits of the offense, however, still stands." (*Id.*)(citing *United States v. Upton*, 91 F.3d 677, 686 (5th Cir. 1996), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1818 (1997) and other cases). "A restitution order [thus] 'must be limited to losses caused by the specific conduct underlying the offense of conviction.'" *United States v. McMillan*, 600 F.3d 434, 459 (5th Cir.), *cert. denied*, 562 U.S. 1006, 131 S.Ct. 504 (2010).

Moreover, while the MVRA does not require "absolute precision," the losses underlying an order of restitution cannot be "speculative." *United States v. Kalu*, 791 F.3d 1194, 1213 (10th Cir. 2015)(quoting *United States v. Gallant*, 537 F.3d 1202, 1252 (10th Cir. 2008) *cert. denied*, 556 U.S. 1198, 129 S.Ct. 2026 (2009) and *United States v. Serawop*, 505 F.3d 1112, 1123 (10th Cir. 2007)). Title 18 U.S.C. §3663A(c)(3)(B) therefore provides that for offenses against property, the MVRA shall not apply if the court finds from the facts on the record that determining issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to such a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

*McMillan*, 600 F.3d at 459-60 (upholding district court's finding that amount of loss attributable to defendants' fraud could not reasonably be determined); *In re W.R. Huff Asset Mgt. Co., LLC*, 409 F.3d 555, 563 (2nd Cir. 2005)(declining to award restitution in securities and bank fraud case where amount of losses to potential victims had not been established and doing so would be excessively time-consuming); *United States v. Tuma*, No. 11-CR-031, 2012 WL 6087068 at *2-3 (W.D. La. Dec. 5, 2012)(restitution denied where complicated issues of causation and damages would unduly burden sentencing process); *United States v. Petal*, 613 F.Supp.2d 811, 812 (E.D. La. 2009)(same where determination of putative victims' losses would entail resolution of complex issues of fact related to cause and amount of losses).

By way of the memorandum that it was directed to file on the issue, the Government argues that the voluminous forfeiture-related filings submitted by the two putative claimants do little to establish their entitlement to restitution. The Government also reports that, after conferring with the United States Probation Office, it, too, has independently concluded that identifying the proper restitution recipient(s) is not possible because of the inability to determine who was directly and proximately harmed as a result of Defendant's offense and, further, that quantifying the amount of restitution would be unduly burdensome and would require an assessment of complex issues of fact. (*Id.*). Having reviewed the lengthy submissions of the Ten Cayman and Global Acquisitions Network, the Court agrees.

In the petition that it originally submitted in this matter, Ten Cayman describes a lengthy, complicated history of negotiations and financial transactions that spanned the course of several years and involved various individuals and entities in the U.S. and abroad. (Rec. doc. 72). Notably missing from that initial submission is <u>any</u> discussion of Defendant's

5

involvement in those transactions and negotiations. (*Id.*). Based upon a review of the chronological narrative that appears in the opening portion of Ten Cayman's petition, it appears that during the 2013 time period when the financial transactions and the primary offense charged in the bill of information occurred, the precise whereabouts of the CMOs that generated the interest payments converted by Defendant were unknown. (*Id.* at pp. 10-15). Among the attachments to Ten Cayman's petition is a copy of a complaint that Global Acquisitions Network had filed in the United States District Court for the Central District of California in the proceeding entitled *Global Acquisitions Network, et al. v. Bank of America Corporation, et al.*, No. 12-CV-8758-DDP-CW. (*Id.* at pp. 34-71). In that complaint, Global Acquisitions Network asserted multiple causes of action against a host of entities and individuals regarding its transfer, and ultimate loss, of two CMOs as collateral for a loan that was never funded. (*Id.*). Although an individual named Christopher Ray Zanco and "Zanco," "a company of unknown business form," were named Defendants in the suit, the Defendant in this criminal proceeding was not. (*Id.*). In the course of resolving some dispositive motions that had been filed in that case, the presiding District Judge observed that "while the purported 'face value' of the CMOs may be billions of dollars, they may in fact be worthless." (Rec. doc. 38, p. 7 in No. 12-CV-8758-DDP-CW). As noted by the Government, Ten Cayman's forfeiture-related filings focus primarily on the circumstances surrounding its claim of ownership of two CMOs and the alleged wrongful claim of Global Acquisitions Network in that regard. Only in Ten Cayman's most recent submission was Defendant Zanco mentioned at all and little was presented to establish that the offense of which he stands convicted was the direct and proximate cause of any loss that it has sustained.

The submissions from Global Acquisition Network paint an equally complicated history of lengthy and complex financial transactions regarding its alleged ownership of two CMOs, but they do little to establish that it was directly and proximately harmed as a result of the offense charged in the bill of information against Zanco such that it would be entitled to restitution under the MVRA. (Rec. docs. 77, 81, 84, 85, 90). Like Ten Cayman, Global Acquisitions Network places some reliance on the litigation that it previously initiated in the Central District of California as evidence of its ownership of two CMOs. (Rec. docs. 77-2, pp. 92-97; 77-3, pp. 1-33). Considering that that litigation came to an abrupt conclusion after the Plaintiffs filed no response to an order to show cause why the action should not be dismissed for failure to state a plausible claim, that prior proceeding cannot be characterized as a watershed event in establishing ownership in the CMOs, much less the interest that may have been derived from them during the relevant time period. (Rec. docs. 126, 119 in No. 12-CV-8758-DDP-CW).

In response to the submissions of Ten Cayman and Global Acquisitions Network, the Government filed its own "Motion and Incorporated Memorandum Addressing Restitution," (rec. doc. 98), in which it advises the Court that

> United States Probation Officer has notified the Government under separate cover that "[a]fter reviewing the documents submitted by the victim's the probation officer is not satisfied that the victims have clearly proved their claims, therefore, the probation officer recommends no order of restitution, pursuant to 18 U.S.C. § 3663(a)(1)(ii), due to the difficulty of determining the victims' claims."
>
> (*Id.* at p. 4, n. 3).

The Government goes on to adopt the Probation Office's conclusion and urge the Court to conclude that the imposition of a restitution order under the present circumstances would

require determining complex issues of fact related to the cause and amount of the alleged victims' losses.

Having reviewed the detailed, lengthy and complex submissions of the two claimants, the Court agrees that a restitution order would ultimately be inappropriate in this case. The submissions before the Court from both putative claimants do not convincingly demonstrate that either is a "victim" within the meaning of the MVRA whose losses attributable to the Defendant's conduct – if any – can reasonably be determined. *Petal*, 613 F.Supp.2d at 812-15. As there are no readily identifiable victims under the MVRA, this Court **recommends** that the judgment of the Court (rec. doc. 67) be **amended** via AO Form 245C ("*Amended Judgment in a Criminal Case*"), to reflect that no restitution be ordered in this case.

### III. Forfeiture

As noted above, the two putative claimants have unleashed upon the Court a virtual avalanche of pleadings and paper staking their claims to restitution and, in a dozen separate pleadings accompanied by hundreds of pages of exhibits, to forfeited property under §853(n). In its own submission primarily addressing the restitution question, the Government convincingly suggests that even if the putative claimants could be classified as victims whose losses were susceptible of a reasonable and ready determination, such a determination would be largely academic because Zanco's financial resources appear to be limited to the value of the assets identified in the preliminary forfeiture order. It goes on to point the Court in the direction of adjudicating the competing interests of the two claimants in separate ancillary forfeiture proceedings.

The Government's suggestion, while certainly attractive from a practical standpoint, is procedurally inappropriate given the present state of the record. Although ancillary

proceedings conducted pursuant to Rule 32.2(c) of the Federal Rules of Criminal Procedure arise in a criminal context, they closely resemble civil proceedings and are thus subject to the procedures governing such proceedings. *United States v. Stone*, 304 Fed.Appx. 334, 335-37 (5th Cir. 2008)(citing *United States v. Corpus*, 491 F.3d 205, 208 (5th Cir. 2007)). Third parties must thus demonstrate standing to contest the federal forfeiture of assets, *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. Unit B 1981), and where the third party is a corporation or other juridical entity, it must be represented by licensed counsel. *United States v. Brown*, 197 F.Supp.2d 574, 575 (W.D. La. 2002); *United States of America v. 2.50 Acres of Land*, No. 00-CV-1526, 2002 WL 34543384 at *2-4 (S.D. Fla. Aug. 27, 2002), *adopted*, 2002 WL 34543073 (S.D. Fla. Oct. 3, 2002). Such is not the case here as to either claimant.

As noted earlier, the entities that filed the §853(n) petitions in this matter identified themselves as "Ten Cayman Ltd." and "Global Acquisitions Network." Whether the former entity is a corporation, a limited liability company, a partnership, or some other fictional legal person, it may be represented only by licensed counsel. *Brown*, 197 F.Supp.2d at 575 (quoting *Southwest Express Co., Inc. v. I.C.C.*, 670 F.2d 53, 55-56 (5th Cir. 1982)). Although the name of an attorney who is in good standing in the State of Georgia appears on Ten Cayman's petition and that attorney was allowed to participate in a telephonic conference that was previously held in this case, that attorney does not appear to be licensed to practice in this State or District and his signature appears nowhere on Ten Cayman's filings.

As for the other petitioning entity, which identified itself as a Wyoming corporation in its earlier lawsuit in the Central District of California, it was made abundantly aware in the

context of that proceeding that it, "... as an organizational plaintiff, cannot pursue its claim without an attorney."  (Rec. doc. 117, p. 4 n. 1 in No. 12-CV-8758-DDP-CW).

Given all this, the Court **recommends** that the petitions of Ten Cayman and Global Acquisitions Network under §853(n) should be **dismissed without prejudice** to their right to re-file same through appropriately licensed counsel.  To the extent that the principals of those entities claim a <u>personal</u> stake in the forfeiture funds that they are able to demonstrate, they are not precluded from filing a §853(n) petition in their own names but only to the extent of such interests.[2]

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the restitution claims of Ten Cayman Ltd. and Global Acquisitions Network be denied and that the judgment of the Court (rec. doc. 67) be amended via AO Form 245C ("*Amended Judgment in a Criminal Case*"), to reflect that no restitution be ordered in this case.

It is further recommended that the 21 U.S.C. §853(n) petitions filed by those two entities be dismissed without prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

---

[2] If the property in question is owned solely by the entities, the individuals would lack standing to assert a personal interest in it. *United States v. Titus*, No. 11-CR-159, 2013 WL 6540164 at *2-3 (E.D. La. Dec. 12, 2013).

10

consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[3]

New Orleans, Louisiana, this __20th__ day of _____September_____, 2016.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[3] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

11